IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| NEW MEXICO IMMIGRANT LAW CENTER, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. _____ |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, | § § § | COMPLAINT FOR DECLARATORY AND |
| Defendant. | § § | INJUNCTIVE RELIEF |

## PLAINTIFF'S ORIGINAL COMPLAINT

### I.    PRELIMINARY STATEMENT

1. Torrance County, New Mexico recently entered into agreements with U.S. Immigration and Customs Enforcement (ICE) and a private contractor – CoreCivic – to detain civil immigration detainees in the Torrance County Detention Facility (TCDF) located 60 miles southeast of Albuquerque.

2. On May 11, 2020 – only seven months after the execution of these contracts – asylum seekers detained in the TCDF started a peaceful hunger strike to protest dismal living conditions, exposure to COVID-19, and lack of information regarding their civil immigration cases.

3. On May 14, CoreCivic guards responded viciously – using OC spray grenades and canisters on this group of about 24 unarmed and non-threatening asylum seekers in a poorly ventilated housing unit within the facility.

4. Plaintiff and other organizations immediately sought to find and disseminate information about this attack to the public at large.

5. On July 14, 2020, Plaintiff submitted a request for information under the Freedom of Information Act (FOIA) to various agencies of the U.S. Department of Homeland Security (DHS) as part of its efforts to educate the public and conduct public advocacy. The requests seek critical records related to the attack and the federal government's policies governing the guards who initiated this act. To date, Plaintiff has not received a single responsive document from ICE.

6. The "basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the government accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).

7. When a FOIA request is made, the agency must communicate a determination regarding the request and "the reasons therefor" within 20 working days of the original request or, in "unusual circumstances," within 30 working days. 5 U.S.C. § 552(a)(6)(A)(i), (a)(6)(B)(i). After this determination, the agency must make the documents "'promptly available,'" which depending on the circumstances typically would mean within days or a few weeks of a 'determination,' not months or years." *Citizens for Responsibility and Ethics in Washington v. Fed. Election Com'n*, 711 F.3d 180, 188 (D.C. Cir. 2013) (citing 5 U.S.C. § 552(a)(3)(A), a(6)(C)(i)).

8. This case is about ICE's unlawful withholding of agency records without any regard for the FOIA and its statutory requirements.

## II. JURISDICTION AND VENUE

9. This Court has subject-matter jurisdiction over Plaintiff's FOIA claims pursuant to 28 U.S.C. § 1331 (federal question) and 5 U.S.C. § 552(a)(4)(B) (FOIA). Plaintiff's request for declaratory and other relief is properly subject to this Court's subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 2201(a), and 2202.

10. Venue is proper within this District under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1391(b)(1), (b)(2), and (e)(1).

### III. PARTIES

11. Plaintiff New Mexico Immigrant Law Center (NMILC) is a 501(c)(3) non-profit organization located in Albuquerque, New Mexico.

12. NMILC started in 2010 and represents immigrants in removal and bond proceedings before Immigration Judges, as well as in applying for humanitarian forms of relief for survivors of crime, human trafficking, and asylum. NMILC partners with community-based organizations, advocacy groups, and businesses to increase knowledge of immigrant rights and to advocate for changes that advance equity and justice for everyone, regardless of immigration status. NMILC is one of the only providers of free immigration legal services to New Mexico residents. The organization provides free legal services to those detained at the Torrance County Detention Facility and the Cibola County Correctional Center. NMILC is listed as a pro bono legal service provider for the El Paso Immigration Court. The organization is frequently a resource for numerous community organizations to provide outreach, trainings, and support for their constituents and members.

13. Additionally, NMILC is a resource for local media, congressional liaisons, and the general public. NMILC is frequently called on to provide "know your rights" presentations to community organizations. NMILC maintains active social media feeds and a blog. The organization is also a main source of information on immigrant rights issues for state and national news outlets. For example, NMILC worked with Searchlight New Mexico to interview detainees

and report the incident at Torrance on May 14th, which was published in The Guardian in July 2020.[1]

14.     An integral part of NMILC's work is ensuring that persons in detention are treated fairly under the law by federal agencies and contractors.

15.     Timely, complete, and accurate information about ongoing governmental operations is key to the effectiveness of NMILC's advocacy.

16.     Plaintiff has constructively exhausted all non-futile administrative remedies.

17.     Defendant ICE is an executive agency component of DHS and an "agency" within the meaning of 5 U.S.C. § 552(f)(1).

## IV.  FACTS

18.     Torrance County entered into an Intergovernmental Service Agreement (IGSA) with ICE in May 2019 under which Torrance County would detain civil immigration detainees in the Torrance County Detention Facility (TCDF) located in Estancia, New Mexico.

19.     Upon information and belief, Torrance County then signed an agreement with CoreCivic to operate the TCDF in October 2019.

20.     According to local reporting, Torrance County entered into the agreement with CoreCivic on the belief that the County would benefit through the creation of up to 240 jobs and the payment of applicable property taxes.[2] This agreement came into effect during a time in which

---

[1] Ike Swetlitz, "'Suddenly They Started Gassing Us': Cuban Migrants Tell of Shocking Attack at ICE Prison," THE GUARDIAN (July 2, 2020), https://www.theguardian.com/us-news/2020/jul/02/cuban-migrants-detention-ice-facility-new-mexico.

[2] "Torrance County to Reopen Detention Center," ALBUQUERQUE JOURNAL (May 15, 2019), https://www.abqjournal.com/1316292/torrance-county-to-reopen-detention-center-ex-up-to-714-male-migrants-to-be-housed-there-in-agreement-with-ice.html.

ICE significantly expanded its nationwide detention capacity,[3] with the agency's average daily detained population increasing in Fiscal Year 2019 to 50,165 individuals, 19 percent above the prior fiscal year.[4]

21. Seven months later, detainees in the TCDF found themselves in deteriorated living conditions, facing inadequate precautions against COVID-19 infection, and without access to information regarding their civil immigration cases.

22. On May 11, 2020, asylum seekers detained at TCDF began a peaceful hunger strike in the TCDF to protest the poor conditions, exposure to COVID-19, and lack of information about their immigration cases and ICE's efforts to deport them.

23. On May 14, 2020, 18 CoreCivic guards deployed spray canisters and grenades of OC spray in an enclosed space and blocked the exits. The hunger strikers were unarmed and posed no threat.

24. The attack resulted in serious physical and mental harm and created a chilling effect for other asylum seekers who sought to speak up about the terms and conditions of their confinement.

25. NMILC – one of the few organizations that advocates for asylum seekers in this rural detention center – immediately sought information related to the attack. NMILC sought to ensure the public knew about what had happened and ICE's policies related to the attack.

---

[3] "Immigration and Customs Enforcement Detention," TRAC REPORTS, INC. (2020), https://trac.syr.edu/phptools/immigration/detention/; "ICE Detainees," TRAC REPORTS, INC. (2021), https://trac.syr.edu/immigration/detentionstats/pop_agen_table.html.

[4] "U.S. Immigration and Customs Enforcement Fiscal Year 2019 Enforcement and Removal Operations Report," U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT (2019), https://www.ice.gov/sites/default/files/documents/Document/2019/eroReportFY2019.pdf.

26. On July 14, 2020, Plaintiff submitted FOIA requests to DHS, ICE, and the DHS Office of Inspector General (DHS-OIG) and sought expedited processing. Ex. 1.

27. DHS designated this request as FOIA request no. 2020-HQFO-01414. Ex. 2.

28. ICE designated this request as FOIA request no. 2020-ICFO-64539. Ex. 3.

29. Plaintiff requested expedited processing with a detailed explanation as to how the request meets the factors posed in 6 C.F.R. § 5(e)(1). Most importantly, Plaintiff needed access to this information to inform the public as to serious violations of civil detainees' due process rights in a detention center in rural New Mexico. Plaintiff sought to educate the public as to the use of chemical agents against ICE detainees at TCDF protesting the lack of adequate protections against COVID-19, as part of a broader pattern of such retaliatory incidents which had generated exceptional interest in the media at the time.

30. The request to all agencies sought the following information:

*a. Any and all contracts/agreements (IGSA) between Torrance County, CoreCivic and ICE signed from 2019-2020.*

*b. Records regarding the management of hunger strikes within Torrance.*

*c. Any email communication between CoreCivic staff and ICE staff in regards to hunger strikes and management of hunger strikes in April and May 2020.*

*d. All audio and visual recordings from any force used on May 14, 2020. All audio and visual recordings of or concerning the Incident, including but not limited to recordings from any and all installed cameras, handheld or mobile cameras, mobile phones, and body cameras. We understand this would include, but is not limited to, all audio and visual recordings of 2 Alpha of the Torrance detention facility, and events taking place therein, from 10:00 a.m. to 6:00 p.m. on May 14, 2020.*

*e. All still photographs of or concerning the Incident on May 14, 2020;*

*f. All reports detailing any force used on May 14, 2020. All reports and other records prepared by Torrance employees, agents, and contractors concerning the Incident, including, but not limited to, reports describing the Incident, and any*

*reports describing Torrance's response to the Incident (including any reports documenting or concerning any use of force, chemical agents, and/or ammunition).*

*g. All records collected, made, or prepared during any investigation of the Incident and a complete copy of any investigation file concerning the Incident.*

*h. All records collected, made, or prepared during any investigation of the Incident by DHS, ICE, or DHS OIG, and a complete copy of any investigation file concerning the Incident.*

*i. All records containing any findings, conclusions, recommendations, or other results of any investigation by DHS, ICE, or DHS OIG concerning the Incident.*

*j. All records containing communications between CoreCivic employees and DHS, ICE, or DHS OIG concerning the Incident. The requested records include, but are not limited to, any such electronic mail and any and all attachments thereto.*

*k. All documents, audio and visual recordings, and other records concerning the Incident provided by CoreCivic to DHS, ICE, or DHS OIG.*

*l. All communications concerning the incident, including electronic mail, from DHS, ICE, or DHS OIG to any other office, agency, or department of the federal government, including the Executive Office of the President.*

*m. All communications concerning the incident with the County of Torrance.*

*n. All reports and after-action reports prepared after investigation by DHS, ICE or DHS OIG concerning the Incident.*

*o. All evidence of medical approval for the use of intermediate force and in particular the use of chemical agents/pepper spray on May 14, 2020, in accordance with PBSDN 2011, 2.15. Use of Force.*

*p. Medical files, with names and other personal identifying information redacted, of detainees who were treated after the use of chemical agents on May 14, 2020, detailing the treatment and date and time of treatment.*

*q. Monthly Inventory of Chemical agents for Torrance County Detention Facility from January 2020 to June 1, 2020.*

*r. Any notices or field policy authorizing the use of Oleoresin Capsicum Aerosol Spray (OC Spray) at the Torrance facility.*

*s. Any information on trainings provided by ICE, including dates of trainings, number of trainings, a number of and a list of who is certified and trained to use*

> *OC Spray. including a breakdown of whether or not they are CoreCivic employees or ICE employees.*

Ex. 1.

31. DHS acknowledged receipt of request no. 2020-HQFO-01414 and granted expedited processing on July 15, 2020. Ex. 4.

32. ICE acknowledged receipt of request no. 2020-ICFO-64539 on July 15, 2020. It did not provide an opinion on the question of expedited processing. Ex. 5.

33. From July 15, 2020 to January 2021, neither agency communicated at all with Plaintiff. As a result, Plaintiff filed an appeal on January 12, 2021 to both ICE and DHS reporting that both agencies failed to abide by the FOIA and failed to respond timely to the original requests. Ex. 6.

34. ICE's appeal office responded on February 9, 2021 to Plaintiff's appeal stating that it was remanding the request to the ICE FOIA office to be processed. It stated that it could not "meet these [statutorily mandated] time limits due to a high volume of requests, resource limitations, or other reasons." Ex. 7.

35. DHS did not respond to Plaintiff's appeal. DHS's FOIA office, however, responded to Plaintiff on February 22, 2021 stating that it was transferring the entire request to ICE (which had already received an identical request) and that DHS would also be responding to the request. Ex. 8.

36. On April 14, 2021 ICE sent a letter to Plaintiff stating that it was creating a new request number for the request made to ICE in July 2020 – No. 2021-ICFO-33781. In this letter, ICE did not provide a determination as to which or how many documents would be responsive to Plaintiff's request. Ex. 9.

37. ICE's new request number indicates that Plaintiff's request has been moved back in priority compared to other previously filed requests.

38. On April 22, 2021, DHS informed Plaintiff that it was transferring Plaintiff's initial request to DHS to the DHS Office for Civil Rights and Civil Liberties (DHS-CRCL) for processing under the FOIA.

39. DHS-CRCL released two pages of documents responsive to Plaintiff's request on April 28, 2021.

40. DHS-OIG released 14 pages of documents responsive to Plaintiff's request on May 19, 2021.

41. While DHS-CRCL, DHS-OIG, and DHS have responded to Plaintiff's request, ICE has not made a decision regarding Plaintiff's request for expedited processing nor has ICE produced any responsive documents to Plaintiff's request.

42. ICE has failed to even provide any determination letter responsive to Plaintiff's July 14, 2020 request and has failed to produce a single document or conduct an actual timely search for records requested.

43. In fact, in April 2021, ICE created a more recent case number for Plaintiff's request which places Plaintiff's request even further back in the ICE FOIA office's queue of requests to which it must respond.

## V. CLAIMS FOR RELIEF

### COUNT ONE: VIOLATION OF THE FREEDOM OF INFORMATION ACT
### 5 U.S.C. § 552(A)(4)(B)
### DENIAL OF EXPEDITED PROCESSING

44. Plaintiff re-alleges and incorporates by reference all allegations in the foregoing paragraphs.

45. Plaintiff sought expedited processing of its request based on several factors demonstrating a compelling need as articulated in its original request to ICE. 5 U.S.C. § 552(a)(6)(E); 6 C.F.R. § 5.5(e)(3).

46. Plaintiff has demonstrated a compelling need for the expedited processing of its FOIA request.

47. ICE's failure to grant Plaintiff's request for expedited processing constitutes an unlawful withholding of agency records in violation of the FOIA.

48. Plaintiff has constructively exhausted all available administrative remedies.

### COUNT TWO: VIOLATION OF THE FREEDOM OF INFORMATION ACT
### 5 U.S.C. §§ 552(a)(4)(B), 552(a)(3)(A), and 552(a)(6)
### UNLAWFUL WITHHOLDING OF AGENCY RECORDS

49. Plaintiff re-alleges and incorporates by reference all allegations in the foregoing paragraphs.

50. Plaintiff has a legal right under FOIA to the timely search and release of responsive, non-exempt agency records responsive to its FOIA request.

51. No legal basis exists for ICE's failure to adequately and timely search for and release responsive agency records in compliance with FOIA's time limits.

52. The agency's failure to make reasonable and timely efforts to search for and release responsive agency records constitutes an unlawful withholding under the Act that this Court can and should remedy through declaration and injunction.

53. ICE has also failed to make "promptly available" responsive documents to Plaintiff. 5 U.S.C. § 552(a)(3)(A).

54. Because the agency has failed to comply with the Act's time limits – including its failure to provide a simple determination or appeal determination to Plaintiff within the Act's time limits – Plaintiff has constructively exhausted its administrative remedies.

## VI.     REQUEST FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court:

1. Enter judgment in favor of Plaintiff and against Defendant.

2. Order Defendant to process Plaintiff's FOIA request expeditiously in accordance with 5 U.S.C. § 552(a)(6)(E) and 6 C.F.R. § 5.5(e).

3. Declare Defendant's withholdings under the FOIA unlawful and enjoin these unlawful withholdings.

4. Issue an injunction ordering Defendant to conduct a prompt and adequate search for all responsive records, determine which, if any, portions of such records are exempt, and require Defendant to release the remaining portions of these agency records.

5. Award Plaintiff reasonable costs and attorney's fees pursuant to 5 U.S.C. § 552(a)(4)(E) and/or 28 U.S.C. § 2412(d)(1)(A).

6. Award Plaintiff such further relief as the Court deems just, equitable, and appropriate.

Submitted: January 7, 2022                          Respectfully submitted,

*/s/ Rebecca Sheff*
Rebecca Sheff
Zoila Alvarez Hernández
ACLU OF NEW MEXICO
P.O. Box 566
Albuquerque, NM 87103
T: (505) 266-5915
F: (505) 266-5916
rsheff@aclu-nm.org
zalvarez@aclu-nm.org


*/s/ Christopher Benoit*
Christopher Benoit
New Mexico Bar No. 15097

                THE LAW OFFICE OF LYNN COYLE, PLLC
                2515 N. Stanton Street
                El Paso, Texas 79902
                T: (915) 532-5544
                F: (915) 532-5566
                chris@coylefirm.com